Robert G. Loewy (SBN 179868)
**LAW OFFICES OF ROBERT G. LOEWY, P.C.**
20 Enterprise, Suite 310
Aliso Viejo, California 92656
Tel: 949-468-7150
rloewy@rloewy.com

Nicholas F. Wasdin (*pro hac vice*)
**DWOSKIN WASDIN LLP**
110 N. Wacker, Suite 2500
Chicago, Illinois 60606
Tel: 312-343-5361
nwasdin@dwowas.com

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER ENDRES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FITON INC.,<br><br>Defendant. | Case No.: 2:24-CV-01589-FMO-PD<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date: July 18, 2024<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>Judge: Hon. Fernando M. Olguin<br><br>Action Filed: February 27, 2024<br>Trial Date: None Set |

# TABLE OF CONTENTS

**INTRODUCTION** .......... 1

**BACKGROUND** .......... 2

**ARGUMENT** .......... 3

I. The Complaint Plausibly Alleges That FitOn Disclosed "Personally Identifiable Information" To Meta. .......... 4

II. FitOn's Arguments To The Contrary Are Without Merit. .......... 6

A. All Of FitOn's Arguments Are Based On An Erroneous Reading Of *Eichenberger*. .......... 6

B. Even Crediting FitOn's Interpretation Of *Eichenberger*, Its Arguments Are Without Merit. .......... 10

1. An Ordinary Person Can Identify Plaintiff From Her Facebook ID. .......... 10

a. Whether Other FitOn Users Had Facebook Accounts Is Irrelevant At This Stage Of The Proceedings. .......... 11

b. FitOn's C_User Cookie Argument Has Been Repeatedly Rejected. .......... 11

c. The Experiment Conducted By FitOn's Counsel Cannot Overcome Plaintiff's Allegations At The Pleading Stage. .......... 13

2. An Ordinary Person Can Identify The Video Content That Plaintiff Requested Or Obtained From FitOn. .......... 16

a. FitOn's "Mixed Content" Argument Is Without Merit. .......... 17

b. FitOn's "Natural Language" Argument Is Without Merit. .......... 20

**CONCLUSION** .......... 23

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Am.'s Test Kitchen, LP,* 680 F. Supp. 3d 31 (D. Mass. 2023) .............. 5, 18

*Ade v. Viki, Inc.*, 2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ...................... 5, 8, 10

*Aldana v. GameStop, Inc.*, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ................... 9

*Czarnionka v. Epoch Times Ass'n, Inc.,* 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) ........................................................................................ 8, 10

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .............................. *passim*

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................................ 10, 16

*Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006 (D. Minn. 2023) .. 5, 18

*Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714 (N.D. Cal. 2023) ........ *passim*

*Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023)... 4, 10, 12, 22

*Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327 (N.D. Ga. 2023)...................... 19

*In re Hulu Priv. Litig.*, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)...................... 4

*In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015)............................ 9, 21

*Jenkins v. McKeithen*, 395 U.S. 411 (1969) ..................................................... 10, 16

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)........... 14, 15, 16

*Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. Feb. 17, 2023) ....... 17, 18

*Martinez v. D2C, LLC*, 2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) ...................... 5

*Mollett v. Netflix, Inc.*, 795 F.3d 1062 (9th Cir. 2015) ............................................ 3

*Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158 (9th Cir. 2022)........... 16

*Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180 (N.D. Cal. July 28, 2023)... *passim*

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 ............................................ *passim*

## INTRODUCTION

When first enacted, the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), was the latest in "a long line of statutes passed by the Congress to extend privacy protection to records that contain information about individuals." Senate Report No. 100-599, at 2 (1988). By passing the VPPA, Congress sought to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio-visual materials." *Id.* at 1. As Congress noted, the videos we select for consumption in our private lives:

> are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people.

Complaint ("Compl.") ¶ 19. Accordingly, the VPPA prohibits "video tape service providers" from disclosing "information which identifies a [consumer] as having requested or obtained specific video materials or services" without informed written consent and opt-out rights. 18 U.S.C. § 2710.

FitOn owns and operates an online video streaming platform called "fitonapp.com." Compl. ¶ 22. FitOn incorporated technologies into its platform to track its users' video request and viewing histories. *E.g.*, *id.* ¶¶ 60-69, 72, 76-82. Each time a user requested video content, FitOn disclosed to a third-party marketing company information that revealed both the specific video requested and the identity of the individual user. *E.g.*, *id.* ¶¶ 76-81.

FitOn does not contest that it is a "video tape service provider" under the VPPA, or that it knowingly disclosed Plaintiff's video viewing history to a third party. Rather, relying on the Ninth Circuit's decision in *Eichenberger*, FitOn argues that it was free to make these disclosures so long as it did so in a way that the recipient would

understand but an "ordinary person" on the street may not. FitOn's argument is without merit.

## BACKGROUND

FitOn owns and operates an online video streaming platform called "fitonapp.com." Compl. ¶ 22. FitOn offers a catalog of fitness and wellness videos for consumers to watch to reach their heath and weight goals over time. *Id.* ¶ 23. FitOn users can request and watch these videos on the FitOn platform. *Id.* ¶¶ 28-36, 42-44.

When FitOn creates a new video, it titles it by subject matter and reference number, such as "workout 22." *Id.* ¶¶ 74-75, 80. When a FitOn user requests the video, they are transported to a video-specific page with the name of the workout video, along with the fact that the user is "browsing" the video, in the URL (*e.g.* www.app.fitonapp.com/**browse /workout/22**). *Id.* (emphasis added). When the user begins to watch the video, the FitOn URL transitions from "browse/workout/[reference-number]" to "inprogress/[reference-number]" (*e.g.*, "www.app.fitonapp.com/**inprogress/22**"), thus indicating that the user transitioned from requesting to obtaining the video. *Id.* ¶ 77 (emphasis added).

Meta is a third-party marketing company that sells advertising, including on Facebook and Instagram. *Id.* ¶ 47. The "Meta Pixel" is a piece of code (called a "cookie") that Meta allows website owners to install and integrate into their websites. *Id.* ¶¶ 52-59. The Meta Pixel collects a substantial amount of information about individuals who visit the websites, including (a) the users' "Facebook ID" ("FID," and sometimes referred to as a "Meta ID," *see id.* ¶ 63 n.2), which is a unique and persistent identifier assigned to each Facebook user, (b) the URL of each webpage the user visits, and (c) the actions the user takes on the website (called "Events"). *Id.* ¶¶ 60-68. Meta uses the information to create "custom" audiences for marketing messages. *Id.* ¶ 51.

FitOn integrated the Meta Pixel throughout the FitOn platform. *Id.* ¶¶ 72-73. Every time a FitOn user requested or viewed a video, FitOn shared with Meta: (a) the users' Facebook ID, (b) the subject matter and specific reference number of the video, (c) data showing whether the user was browsing or watching the video, (d) "Event" data showing the buttons the user clicked while viewing the video, including to start or pause the video, and (e) the URL where the video is located online. *Id.* ¶¶ 60-68, 76-79, 81. In addition to the videos available to be watched on the FitOn platform, FitOn also offers additional video content for individual purchase. *Id.* ¶ 81. The data transferred to Meta also discloses any video purchases made by a FitOn user. *Id.*

Plaintiff subscribed to FitOn from June 2023 to September 2023. *Id.* ¶ 14. Plaintiff requested and watched videos on the FitOn platform and also purchased additional video content. *Id.* Plaintiff had a Facebook account during the same time period. *Id.* Through the data sharing practices described above, FitOn disclosed Plaintiff's video request and viewing history to Meta. *Id.*

## ARGUMENT

To state a claim under the VPPA, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). FitOn does not challenge that the Complaint plausibly alleges the first, third and fourth elements. Rather, FitOn argues only that the information it disclosed was not "personally identifiable information" ("PII") under the VPPA. ECF 22 at 3-9.

### I. The Complaint Plausibly Alleges That FitOn Disclosed "Personally Identifiable Information" To Meta.

The VPPA defines PII to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Thus, to qualify as PII, the disclosure must include: (a) "information which identifies a person," and (b) the "specific video materials or services" the person "requested or obtained." *Id.*

**Information Which Identifies A Person.** To plead "information which identifies a person," a plaintiff can allege that the disclosure contained either: (a) "information that, standing alone, identifies a person," or (b) "information that *can be used* to identify an individual," so long as the disclosure of such information "readily permit[s] an ordinary person" to do so. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984-85 (9th Cir. 2017) (emphasis in original). Facebook IDs fall into the first bucket. *E.g.*, *Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *4–5 (N.D. Cal. July 28, 2023) (holding that a Facebook ID "is a unique identifier that is enough, on its own, to identify a person"); *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) ("The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user."); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("Most, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII.") (collecting cases).

**Specific Video Materials Or Services.** To plead that the disclosure included "specific video materials or services," a plaintiff can allege that the disclosure included: (a) the name or identification number of a video; (b) the subject matter of a video; or (c) the URL where the video is located online. *Sellers*, 2023 WL 4850180, at *3 ("[P]laintiff alleges that [the defendant] uses the Facebook pixel to disclose 'the content name of the video the digital subscriber watched,'" which is "enough at the pleading stage"); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 160

n.10 (S.D.N.Y. 2023) (denying motion to dismiss where "the FAC plausibly alleges that the disclosure … identifies the subject matter of the viewed video"); *Adams v. Am.'s Test Kitchen, LP,* 680 F. Supp. 3d 31, 42 (D. Mass. 2023) (rejecting the argument that the disclosure did not sufficiently identify the video because "a simple visit to the [disclosed] URL would provide any third party who receives the information confirmation of the specific video requested or obtained"). "[E]lectronic disclosures of a person's video-viewing history, even if not explicit, can violate the VPPA." *Ghanaat*, 689 F. Supp. 3d at 720-721 (citing *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) (collecting cases)). "And most district courts that have addressed the use of [the Meta] Pixel specifically reached this same result in the context of Rule 12(b)(6) motions." *Feldman*, 659 F. Supp. 3d at 1021.

Applying these concepts, courts regularly deny motions to dismiss where the defendant disclosed, via the Meta Pixel, both: (a) an individual's Facebook ID, and (b) information regarding the videos the user requested or obtained. For example, in *Ade v. Viki, Inc.*, the plaintiff alleged that the defendant impermissibly "disclosed its users' identities and video-viewing preferences to [Meta] through the Meta Pixel." *Ade v. Viki, Inc.*, 2024 WL 1880153, at *1 (N.D. Cal. Mar. 28, 2024). The court held that the general allegations of PII disclosure—*i.e.*, that the defendant sent the plaintiffs' "PII, including [their] FID[s], as well as the title of each prerecorded video [they] viewed"—were sufficient at the pleading stage. *Id.* at *2; *see also Sellers*, 2023 WL 4850180, at *4-5 (similar); *Ghanaat*, 689 F. Supp. 3d at 720 (similar); *Martinez v. D2C, LLC*, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023) ("[T]he Court agrees with other courts that have had no difficulty concluding that alleging, generally, that a defendant disclosed the 'name of the video the digital subscriber watched' is sufficient.").

Here, the Complaint alleges that Plaintiff requested, watched and purchased videos on the FitOn platform. Compl. ¶ 14. Every time Plaintiff did so, FitOn disclosed to Meta: (1) Plaintiff's Facebook ID; (2) the specific reference number of the video Plaintiff requested; (3) data showing whether Plaintiff was browsing or watching that video; (4) "Event" data showing the buttons Plaintiff clicked while viewing the video, including to start or pause the video; and (5) the URL where the video is located online. *Id.* ¶¶ 60-68, 76-79, 81. These allegations are more than sufficient to plausibly allege the disclosure of PII at the pleading stage.

## II. FitOn's Arguments To The Contrary Are Without Merit.

FitOn does not contest that it knowingly made the alleged disclosures and that the recipient, Meta, was able to interpret the information. Rather, relying on the Ninth Circuit's decision in *Eichenberger*, FitOn argues that it was free to make these disclosures, so long as it did so in way that Meta could understand but an "ordinary person" on the street may not. ECF 22 at 5-9. FitOn's arguments are without merit.

### A. All Of FitOn's Arguments Are Based On An Erroneous Reading Of *Eichenberger*.

In *Eichenberger*, the defendant disclosed the "serial number" of a digital streaming device that did not identify the plaintiff. *Eichenberger*, 876 F.3d at 981. Unbeknownst to the defendant, the recipient of that information was in possession of *other* information acquired from *other* sources that allowed it to piece together the plaintiff's identity. *Id.* The question presented was whether the serial number—which did not, on its own, identify the plaintiff—was nevertheless PII in light of the recipient's ability to combine it with other data obtained from other sources to identify the plaintiff. *Id.*

Analyzing the statutory language, the Ninth Circuit concluded that there are at least two types of information that qualify as PII under the VPPA: (1) information

"which, by itself, identifies an individual as having watched certain videos"; and (2) "some information that *can be used* to identify an individual." *Id.* at 984 (emphasis in original). To avoid making "[t]he lawfulness of [a] disclosure . . . depend on circumstances outside of [a video tape service provider's] control," the Ninth Circuit adopted the "ordinary person" standard. *Id.* at 984-85. Under that standard, information that is merely "capable of" identifying an individual is nevertheless PII if it "readily permit[s] an ordinary person" to identify a particular individual. *Id.* at 985.

In adopting the "ordinary person" standard, the Ninth Circuit stated that the VPPA "focuses on what information a video service provider 'knowingly discloses.'" *Id.* "In other words, the statute views disclosure from the perspective of the disclosing party," and "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it." *Id.* Thus, under *Eichenberg*, video tape service providers need not worry that an otherwise lawful disclosure of information that does *not*, on its own, identify a particular individual, will be transformed into PII by the recipient's ability to combine it with other information. *Id.* (providing the following example: "if the disclosure were that 'a local high school teacher' had rented a particular movie," it would not violate the VPPA "even if one recipient of the information happened to be a resourceful private investigator who could, with great effort, figure out which of the hundreds of teachers [in the area] had rented the video").

Applying this framework, the Ninth Circuit found that the serial number at issue "*cannot* identify an individual unless it is combined with other data in [the recipient's] possession," which the defendant "never disclosed and apparently never even possessed." *Id.* at 985-86 (emphasis in original). Thus, the serial number did not, by itself, identify an individual, and would constitute PII only if it "readily permit[ed]

an ordinary person" to do so. *Id.* at 985. The serial number did not satisfy that standard because, in order to identify the plaintiff, it had to be combined with "'an enormous amount of information' collected 'from a variety of [other] sources' using a "complex 'Visitor Stitching technique.'" *Id.* at 986.

Contrary to FitOn's arguments, *Eichenberger* did not address a situation where, as here, *the entirety* of the information necessary to identify Plaintiff and connect her to specific videos was knowingly disclosed as part of a single data transmission. Such a disclosure: (a) by itself identifies an individual as having watched certain videos; and (b) does not raise the concern that *Eichenberger* adopted the "ordinary person" standard to address—*i.e.,* that, if the recipient's ability to identify the plaintiff requires additional information obtained from other sources, "[t]he lawfulness of [a] disclosure ... [would] depend on circumstances outside of [a video service provider's] control." *Id.* at 984-85. Courts addressing VPPA claims like those at issue here have repeatedly distinguished *Eichenberger* on those grounds. *See e.g.*, *Sellers*, 2023 WL 4850180, at *4–5 (noting that, unlike *Eichenberger*, in which "the information at issue …'cannot identify an individual unless it is combined with other data in [the recipient's] possession,'" a Facebook ID "is a unique identifier that is enough, on its own, to identify a person"); *Ade*, 2024 WL 1880153, at *2 (rejecting defendant's argument that the Facebook ID was not PII, and stating: "[t]hat an individual can allegedly be identified based solely on their unique FID distinguishes this case from *Eichenberger*, where the … device serial number could not identify an individual 'unless it [wa]s combined with other data in a [third party]'s possession'"); *Czarnionka v. Epoch Times Ass'n, Inc.,* 2022 WL 17718689, at *1 (S.D.N.Y. Dec. 15, 2022) ("[T]he Facebook ID is clearly distinguishable from information found not to qualify as PII by [*Eichenberger* and other] courts adopting the 'ordinary person' standard, such as anonymized device serial numbers or IP addresses, which must be combined with

other information to identify individuals and which 'would likely be of little help' to 'an average person.'").

Thus, *Eichenberger* does not state that FitOn is free to knowingly disclose *the entirety* of the information necessary to identify Plaintiff and connect her to specific videos, so long as it does so in a way that the recipient can understand but an "ordinary person" on the street may not. If that were the law, then video tape service providers would be free to knowingly disclose individuals' video viewing histories to *anyone* using end-to-end encryption (which is widely used by companies and common on most modern smart phones). FitOn's argument to the contrary is undermined by the case law quoted in its brief, which states that: "No one would deny that I would violate the VPPA by passing someone an encrypted list of [an individual's] video rentals—if my recipient and I both understood that we would use a mutually intelligible code." ECF 22 at 7-8 (quoting *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015). Other courts are in accord. *E.g.*, *Aldana v. GameStop, Inc.*, 2024 WL 708589, at *8 (S.D.N.Y. Feb. 21, 2024) (rejecting argument "that Facebook alone may be able to read the c_user cookie to identify a user" because "[c]ourts across the country—including in this district—have indicated that providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA.").

For these reasons, the arguments FitOn advances—*e.g.*, that an "ordinary person" may be not understand the Meta Pixel, and may be confused by the "symbols and characters" embedded into the disclosure during the data transfer, ECF 22-at 5, 7—are inapposite. FitOn does not contest that it knowingly disclosed 100% of the information needed to identify Plaintiff as having requested or obtained specific video materials or services from FitOn. That is a VPPA violation. 18 U.S.C. § 2710(a)(3). *Eichenberger* does not relieve FitOn of liability merely because a random person on

the street might be unfamiliar with the technology used or the format of the data transfer.

### B. Even Crediting FitOn's Interpretation Of *Eichenberger*, Its Arguments Are Without Merit.

Even crediting FitOn's interpretation of *Eichenberger*, its arguments that an "ordinary person" may not understand its disclosures should nevertheless be rejected.

#### 1. An Ordinary Person Can Identify Plaintiff From Her Facebook ID.

The Complaint alleges that *anyone*—not just Meta—can identify Plaintiff using her Facebook ID by simply appending it to the following web address: www.facebook.com/[Facebook ID]. Compl. ¶¶ 66-67. Those allegations must be accepted as true and construed in the light most favorable to Plaintiff at the pleading stage. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Many courts have held that these allegations are sufficient to plead PII under the "ordinary person" standard. *E.g.*, *Ghanaat*, 689 F. Supp. 3d at 717, 720 (Facebook ID is PII under the "ordinary person" standard because "[i]f [the FID is] appended to the URL "facebook.com/" it will lead to the associated user's Facebook page"); *Ade*, 2024 WL 1880153, at *2 (where the complaint alleged that anyone "can use the FID to quickly and easily locate, access, and view the member's corresponding Facebook profile," the complaint "plausibly [pled] that the plaintiffs' FIDs are PII under the Ninth Circuit's 'ordinary person' standard."); *Sellers*, 2023 WL 4850180, at *4 (agreeing that "the FID can be used by an ordinary person to identify a specific individual"); *Czarnionka*, 2022 WL 17718689, at *1 ("The Facebook ID disclosed by Epoch Times is sufficient for an ordinary person to identify Plaintiff and similarly situated individuals by simply typing "facebook.com/[Facebook ID]" into a web browser."); *Golden*, 688 F. Supp. 3d at 159–60 ("Disclosure of the PII alleged here, a

Facebook ID, would 'readily permit an ordinary person to identify the specific individual's video-watching behavior.'").

**a. Whether Other FitOn Users Had Facebook Accounts Is Irrelevant At This Stage Of The Proceedings.**

According to FitOn, to have a Facebook ID a user must have a Facebook account, and "Plaintiff does not allege all, or even a majority of, FitOn users have [Facebook] accounts." ECF 22 at 5. This argument appears to conflate the issue of whether *Plaintiff* states a claim under the VPPA with the separate issue of the scope of any future class. With respect to *Plaintiff's* claim (which is the subject of FitOn's 12(b)(6) motion), the Complaint alleges that Plaintiff had a Facebook account during the relevant time period, and thus that her Facebook ID was shared with Meta every time she requested or obtained a video. *Id.* ¶¶ 14, 60-68, 76-79, 81. The number of *other* FitOn users that also had Facebook accounts is irrelevant to Plaintiff's individual claim.

**b. FitOn's C_User Cookie Argument Has Been Repeatedly Rejected.**

The Meta Pixel captures and discloses Facebook IDs through the "c_user" cookie. Compl. ¶ 63. "Cookies" are small pieces of code used to capture and store information on web browsers. *Id.* ¶ 55. FitOn argues that an "ordinary person" may not understand the c_user cookie, and thus that the Facebook ID it captures and transmits to Meta is not PII. ECF 22 at 5. This argument—essentially, that information is not PII unless an "ordinary person" understands the technology that led to its disclosure—has been repeatedly rejected.

For example, in *Sellers*, the defendant argued "that the information transferred is the c_user cookie, which an ordinary person could not use to identify a person because the c_user cookie cannot be read by the ordinary person." *Sellers*, 2023 WL 4850180, at *4. The court rejected that argument because "the relevant information is

the FID, not the cookie," and "[t]he FID is a unique identifier that is enough, on its own, to identify a person." *Id.* "Although the mode through which the information was transmitted may have been the c_user cookie, the information itself – the FID – is information sufficient to identify a person." *Id.* at *5.

Similarly, in *Golden*, the defendant argued that "it did not disclose PII because 'the only parties that can read the [c_user] cookie's contents—including any stored FID value—are Facebook and the user," and thus "disclosure of [the] cookie does not identify a specific person to an 'ordinary person.'" *Golden*, 688 F. Supp. 3d at 159–60. The court rejected that argument because it "conflates the type of information disclosed with the recipient of its disclosure," and is thus contrary to *Eichenberger*'s holding that the VPPA "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it ... [or] its recipient's capabilities." *Id.* at 160. Denying the motion to dismiss, the court cited numerous other cases holding that "[d]isclosure of the PII alleged here, a Facebook ID, would 'readily permit an ordinary person to identify the specific individual's video-watching behavior.'" *Id.*

FitOn's argument here fails for the same reason. The relevant information is the Facebook ID, not the c_user cookie that collected and disclosed it. The Complaint alleges that anyone can easily use a Facebook ID to identify an individual. Compl. ¶¶ 66-67. Thus, a Facebook ID is PII under the "ordinary person" standard. It makes no difference whether an "ordinary person" *also* understands the technology that led to the disclosure.

Moreover, FitOn's argument to the contrary is a naked factual assertion regarding the "ordinary person's" capabilities. While FitOn is free to advance its argument on a developed record at summary judgment, it cannot assert its own version of the facts in support of a motion to dismiss. If raised again at Rule 56, FitOn's

argument is likely to be unavailing, as an "ordinary person" can simply Google the information FitOn claims they need (*e.g.*, the information captured by the c_user cookie, and how to use a Facebook ID to identify someone in the real world), a straightforward task completely unlike gathering the "enormous amount of information," and interpreting it with a "complex Visitor Stitching technique," that was beyond the "ordinary person's" abilities in *Eichenberger*. But resolution of that issue is for another day, as FitOn's factual assertions regarding the "ordinary person's" capabilities cannot defeat Plaintiff's allegations at the pleading stage.

**c. The Experiment Conducted By FitOn's Counsel Cannot Overcome Plaintiff's Allegations At The Pleading Stage.**

Separate and apart from the allegation that a Facebook ID can be used to identify an individual (Compl. ¶ 65), the Complaint also contains screenshots showing example data transmissions (*e.g. id.* ¶¶ 76-77). The screenshots, which were captured by Plaintiff's counsel during its pre-suit investigation, show an example of FitOn transferring a particular Facebook ID (105425) to Meta. *Id.* As Plaintiff's counsel told FitOn's original counsel several months ago, the Facebook ID in the screenshots belongs to an attorney, not to Plaintiff.

To test the allegations in the Complaint, FitOn's counsel ran an experiment. ECF 22-1. In particular, he directed an unknown person to append the attorney's Facebook ID to the URL described earlier in the Complaint (www.facebook.com/[Facebook ID]). *Id.* According to the declaration, the output of that experiment was a webpage stating that the "content isn't available right now" and may have been deleted. ECF 22-1 at Ex. 1. Relying on this experiment, FitOn argues that the allegation in the Complaint—that a Facebook ID can be used to identify an individual on the internet—is false. ECF 22 at 6. FitOn's reliance on this experiment at the pleading stage is improper for several reasons.

*First*, contrary to FitOn's arguments (ECF 22 at 6 n.2), neither the experiment nor the document created in connection therewith are incorporated into the Complaint by reference. A document can be incorporated by reference in two ways: (1) if it is "extensively" referenced in the complaint; or (2) if the plaintiff's claims "necessarily" depend on the document such that it "forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-04 (9th Cir. 2018). Here, the Complaint does not mention the specific webpage purportedly depicted in the document *at all*, and thus it was not incorporated through "extensive" reference.[1] And Plaintiff's claims do not "necessarily" depend on whether FitOn's counsel can access *another attorney's* Facebook page, and thus the website does not "form the basis" of Plaintiff's claims.

FitOn's argument to the contrary—that "Plaintiff's case theory relies on the contention that anybody can easily identify a person using a Facebook ID," and thus FitOn's document form the basis of Plaintiff's claims (ECF 22 at 6 n.2)—is squarely foreclosed by the Ninth Circuit's decision in *Khoja*. There, the Ninth Circuit held that documents do not "form the basis" of a plaintiff's claims merely because they "create a defense to the well-pled allegations." *Khoja*, 899 F.3d 988, 1002.

> Otherwise, defendants could use the [incorporation-by-reference] doctrine to insert their own version of events into the complaint . . . Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff

[1] The website purportedly depicted in the document is: https://facebook.com/105425/. ECF 22-1 at Ex 1. FitOn's counsel generated that URL by combining multiple different allegations in the Complaint together. Compl. ¶ 65 (referencing www.facebook.com/[MetaID]); *Id.* ¶ 76 (screenshot containing 105425).

> receives no opportunity to respond to the defendant's new version of the facts. . . . [T]he incorporation-by-reference doctrine . . . is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.

*Khoja*, 899 F.3d 988, 1002-03. FitOn's document is, at most, a defense to Plaintiff's allegations, and was thus not incorporated into the Complaint by reference under *Khoja*.

*Second*, FitOn concedes that a document cannot be incorporated by reference if its authenticity can be questioned. ECF 22 at 3. Here, Plaintiff knows nothing about the document (or the underlying experiment), except that it was created at the direction of counsel in connection with litigation. ECF 22-1 at 1. The accompanying declaration does not state who captured the screenshot, when it was captured, what web browser was used, what settings were active on the browser, and whether the computer used to capture the screenshot was logged into Facebook at the time the experiment was performed. Indeed, the document is contrary to publicly available sources regarding the ability to use a Facebook ID to access a Facebook profile. *E.g.*, https://www.techwalla.com/articles/how-to-find-a-person-from-their-facebook-id (stating that "if you have someone's ID number and want to map it to a profile, you can go to www.facebook.com/[id-number], replacing 'id-number' with the person's Facebook ID").[2] Thus, Plaintiff can reasonably question the authenticity of the document, and it should not be considered in connection with FitOn's motion.

---

[2] Notably, on a call with FitOn's original counsel (who withdrew from the case on June 21, 2024, *see* ECF 23), Plaintiff's counsel explained that the Facebook ID captured in the Complaint belonged to another attorney (and not Plaintiff), and walked FitOn's counsel through how to enter the information into a web browser to identify the associated Facebook page. Plaintiff's counsel understood that FitOn's original counsel entered the same Facebook ID into his web browser and was able to access the associated Facebook page.

*Third*, and most importantly, even if the document was incorporated by reference (and it was not), "it is improper to accept the truth of matters asserted in incorporated documents only to resolve factual disputes against the plaintiff's well-pled allegations." *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1166 (9th Cir. 2022); *Khoja*, 899 F.3d at 1003 ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."). The Complaint alleges that a Facebook ID allows anybody to identify an individual's identity by appending the Facebook ID to the following web address: www.facebook.com/[Facebook ID]. Compl. ¶ 65. Those allegations must be accepted as true and construed in the light most favorable to Plaintiff at the pleading stage. *Erickson*, 551 U.S. at 93–94; *Jenkins*, 395 U.S. at 421. If FitOn wants to contest Plaintiff's allegation, and support its arguments with experiments like the one described in counsel's declaration, it can do so under Rule 56, after Plaintiff has had an opportunity to inspect the computer used during the experiment and depose the individual(s) who conducted it.

**2. An Ordinary Person Can Identify The Video Content That Plaintiff Requested Or Obtained From FitOn.**

The Complaint alleges that FitOn's disclosures contained, among other things, the specific FitOn reference number of the videos Plaintiff requested and data showing whether Plaintiff was browsing or watching those videos. *Id.* ¶¶ 76-79, 81. FitOn does not contest that the reference numbers disclosed identify the specific video materials, and those numbers are self-evident in the text of the data transmissions. *E.g.*, Compl. ¶ 76 (when a user requests "workout 22," FitOn discloses "%2F**browse**%2F**workout**%2F**22**&rl") (emphasis added). Thus, FitOn's disclosures included the "specific video materials or services" requested and were PII under the VPPA.

That conclusion is true *regardless* of what the recipient does with this information. *Eichenberger*, 876 F.3d at 985 (stating that the VPPA "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it."). That said, if the recipient wished to investigate the video to see for themselves exactly what the FitOn user was watching, they could easily do so by appending the disclosed video reference number to the end of the FitOn URL in a web browser. Compl. ¶ 75. In particular, FitOn's videos can be accessed online at: https://app.fitonapp.com/browse/workout/numeric-video-title]. *Id.* Thus, if the recipient of the above disclosure wished to investigate "workout 22" to see for themselves what the FitOn user was watching, they could do so by taking the information FitOn disclosed and entering the following URL into their web browser: https://app.fitonapp.com/browse/workout/22. *Id.* ¶¶ 74-75.

**a. FitOn's "Mixed Content" Argument Is Without Merit.**

FitOn argues that its webpages contain "mixed content," including both the video *and* "a [written] description of [the] video." ECF 22 at 7. As a result, FitOn contends, its disclosure (*e.g.*, "**app.fitonapp.com**%2F**browse**%2F **workout**%2F**22**") does not identify whether the user requested or obtained *the video* or merely the written description. *Id.* In support of this argument, FitOn relies on the SDNY's opinion in *Martin*, which, FitOn says, "declin[ed] to find PII disclosed when [the] webpage contained both video and text such that [a] webpage visitor may have merely reviewed text on the page 'or opened the page and done nothing more.'" *Id.* (citing *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. Feb. 17, 2023)).

In *Martin*, the plaintiff subscribed to "People.com," a celebrity gossip site that contained articles about celebrities and, on some pages, related videos. 657 F. Supp. 3d at 281. The complaint alleged that, through the Meta Pixel, the defendant disclosed "the name of the webpage that a user accessed." *Id.* at 284. The name of the webpages,

however, did not: (a) reference any videos on the page; or (b) even disclose whether there were any videos on the page at all. *Id.* The court stated that "disclosing to a third party the title of the webpage [did] not reveal the title of a video on the page, let alone whether the website visitor requested or obtained the video instead of merely reviewing an article on the page." *Id.* at 284-85.

To the extent *Martin* held that the disclosure must include an *express* reference to the video, numerous courts have disagreed. For example, if the disclosure is a URL that does *not* reference a specific video (*e.g.*, www.blockbuster.com/video-of-the-week), a recipient could simply enter the URL into their web browser and see the video content for themselves. *Adams, LP,* 680 F. Supp. 3d at 42 (rejecting the argument that the disclosure did not sufficiently identify the video because "a simple visit to the URL would provide any third party who receives the information confirmation of the specific video requested or obtained"). Thus, the general rule, adopted in the majority of cases, is that "electronic disclosures of a person's video-viewing history, even if not explicit, can violate the VPPA." *Ghanaat*, 689 F. Supp. 3d at 720-721 (citing *Feldman*, 659 F. Supp. 3d at 1021 (collecting cases)).

That said, FitOn does not contest that the information it disclosed contained an *express* reference to the video. Thus, unlike the disclosure in *Martin*, FitOn's disclosure, by itself, revealed the specific video content requested. Further unlike *Martin*, in which the web pages contained full-length articles that may have been the user's primary or exclusive interest, the only "mixed content" FitOn identifies is a description of the video itself. ECF 22 at 7. Since the entire page is dedicated to the video, the user would not even encounter the video description until *after* requesting the video and directed to the page and thus *after* that request had been disclosed to Meta.

FitOn argues that the user may not go on to *watch* the video. ECF 22 at 7. But PII under the VPPA is not limited to the videos that a user "watched." Rather, PII broadly includes information which identifies a person as having "requested *or* obtained" video materials or services. 18 U.S.C. § 2710(a)(3) (emphasis added); *see also Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336 (N.D. Ga. 2023) ("To the extent Defendant argues the VPPA requires Plaintiff actually watch the videos, the Court rejects that argument. . . . Nowhere does the VPPA require that the consumer actually watch the video."). The data that FitOn disclosed identified the videos "requested," and thus, regardless of whether the user went on to watch the video, a VPPA violation occurred.

Moreover, FitOn's disclosures *also* revealed whether the video content was "obtained." In particular, the Complaint alleges that, when a user begins to watch a video, the end of the FitOn URL transitions from "**browse**/workout/[specific-video-reference-number]" to "**inprogress**/[specific-video-reference-number]," thus indicating that the user transitioned from requesting to obtaining that video content. Compl. ¶ 77 (emphasis added). The text of the related disclosure to Meta similarly transitions from "%2F**browse**%2F**workout**%2F**[specific-video-reference-number]**&rl" to "**inprogress**%2F**[specific-video-reference-number]**&rl." *Id.* ¶¶ 76-77 (emphasis added). Thus, FitOn's disclosures leave no ambiguity regarding whether the user "obtained" the video or merely read the video's description.

This case is thus very much unlike *Martin*, where the information disclosed omitted *any* information about the video. All of the information missing in *Martin* was present in FitOn's disclosures here. FitOn's argument that it can nevertheless evade liability because its video-specific webpages also contained a written "description of [the] video" is without merit. *See Sellers*, 2023 WL 4850180, at *3 (distinguishing *Martin* in which "the alleged disclosure was limited to the name of a

webpage that may contain a video, not the name of the video itself," whereas "[h]ere . . . plaintiff alleges that [defendant] uses the Facebook pixel to disclose 'the content name of the video the digital subscriber watched, the URL, and the digital subscribers' FID").

**b. FitOn's "Natural Language" Argument Is Without Merit.**

FitOn argues that the "symbols and alphanumeric values" embedded in its disclosures — *e.g.*, "**%2F**browse**%2F**workout**%2F**22**&rl**" — render them unintelligible to the "ordinary person." ECF 22 at 7-9. As FitOn reads the case law, it is free to knowingly disclose its users' video viewing histories, so long as it uses "code" instead of the "natural language." *Id.* This argument fails for several reasons.

*First*, whether a disclosure "sufficiently identifies a video is ultimately a factual question that should not be resolved on a motion to dismiss." *Ghanaat*, 689 F. Supp. 3d at 721. FitOn's argument that the format of its disclosures would be unintelligible to an "ordinary person" rests on contested factual assertions. *Eichenberger* does not say that an "ordinary person" is confused by "symbols and alphanumeric characters" or incapable of researching information on the internet. Rather, *Eichenberger* says only that an "ordinary person" is incapable of linking a Roku serial device number with "an enormous amount of information" collected "from a variety of sources" using a "complex Visitor Stiching technique" developed by Adobe. *Eichenberger*, 876 F.3d at 986. Beyond that the "ordinary person's" capabilities are a jury question.

*Second*, FitOn bases its "natural language" argument entirely on the decision in *In re Hulu*. ECF 22 at 7-9. But *In re Hulu* directly undermines FitOn's argument. In particular, *In re Hulu* states that a defendant *violates* the VPPA by "passing someone an encrypted list of [an individual's] video rentals—if [the] recipient and [the discloser] both understood [they] would use a mutually intelligible code." *In re Hulu Privacy Litig.*, 86 F. Supp. 3d at 1096-97. *In re Hulu* further states that where

the disclosure contains "only a garbled collection of alphanumeric strings" (as FitOn characterizes the disclosure here), it is nevertheless actionable if the recipient has "the capacity to decode and read the contents." *Id.* FitOn concedes that *Meta* understood the disclosure. ECF 22 at 7 (describing the disclosure as "software code transmitted by Meta for its use"). Thus, *In re Hulu* provides no support for FitOn's argument that disclosures are not actionable.

*Third*, and in any event, FitOn did not use an unintelligible "code" and a plain reading of its disclosures are sufficient to identify the videos at issue. For example, when a FitOn user navigates to the page for "workout 22," which is located at the URL "app.fitonapp.com/browse/workout/22," FitOn discloses the following URL data to Meta: "**<u>app.fitonapp.com</u>**%2F**<u>browse</u>**%2F**<u>workout</u>**%2F**<u>22</u>**." Compl. ¶ 76 (emphasis added). This information includes both the subject matter and reference number of the video ("workout 22"), as well as the entire URL where the video is located online. FitOn may have a low opinion of an "ordinary person's" intelligence, and their ability to do basic research on Google, but it cites no authority stating that, as a matter of law, they would be incapable of understanding this data and linking the user to "workout 22."

Moreover, FitOn also cites no authority for the proposition that the "symbols and alphanumeric values" included in its disclosures are even relevant to the analysis. As described above, in rejecting the analogous argument that an "ordinary person" may not be able to interpret the "c_user cookie," the *Sellers* court noted that "the relevant information is the [Facebook ID], not the cookie." *Sellers*, 2023 WL 4850180, at *4. With respect to the disclosure of the video, the relevant information is the specific video reference number that FitOn assigns to each workout, not the "symbols and alphanumeric values" interspersed into the broader collection of data

transferred by the Meta Pixel. *That* information is not "coded," but rather appears in the ordinary English FitOn says is intelligible to the "ordinary person."

Further, the VPPA protects more than just the specific video reference number—it also prohibits disclosure of the "subject matter" of the video. 18 U.S.C. § 2610(2)(d)(ii) (permitting disclosure of PII "if the disclosure is solely of the names and addresses of consumers and if . . . [it] does not identify the title, description, or *subject matter* of any . . . audio visual material") (emphasis added). FitOn does not (and cannot) contest that its disclosure clearly identifies the subject matter of the videos (*i.e.*, "workout"). And it is no less invasive for FitOn to disclose that an individual is watching a "workout" video than it is to disclose the specific video reference number. *See Golden*, 688 F. Supp. 3d at 160 n.10 (denying motion to dismiss because "regardless whether the 'title' of the viewed videos were disclosed, the FAC plausibly alleges that the disclosure … identifies the subject matter of the viewed video").

Finally, FitOn's related argument regarding the legibility of the entire URL (ECF 22 at 8-9) fails for all of the above reasons. If an "ordinary person" received the following disclosure, they would know that it was a .com web address and could figure out what to do with it: "**app.fitonapp.com**%2F**browse**%2F **workout**%2F**22**." Compl. ¶ 76 (emphasis added). That said, FitOn's argument regarding the entire URL is largely beside the point, as a VPPA violation occurred when FitOn disclosed the specific video reference number, regardless of whether the recipient of that information endeavored to also identify the entire URL and watch the video for themselves. *Cf. Eichenberger*, 876 F.3d at 985 (stating that the VPPA "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it.").

## CONCLUSION

For the foregoing reasons, the Court should deny FitOn's motion to dismiss in its entirety.

Dated: June 26, 2024 By: *Nicholas F. Wasdin*

Nicholas F. Wasdin*
**DWOSKIN WASDIN LLP**
110 North Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 343-5361
nwasdin@dwowas.com

Robert G. Loewy (SBN 179868)
**LAW OFFICES OF ROBERT G. LOEWY, P.C.**
20 Enterprise, Suite 310
Aliso Viejo, California 92656
Tel: 949-468-7150
rloewy@rloewy.com

***Counsel for Plaintiff and the Proposed Class***

*Admitted *pro hac vice*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, Jennifer Endres, certifies that this brief contains 6,966 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 26, 2024 By: *Nicholas F. Wasdin*

Nicholas F. Wasdin*
**DWOSKIN WASDIN LLP**
110 North Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 343-5361
nwasdin@dwowas.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on June 26, 2024, he utilized the Court's CM/ECF system to electronically serve all appearing parties in this action at their electronic addresses of record with the below described document:

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS.**

Dated: June 26, 2024

*/s/ Nicholas F. Wasdin*

Nicholas F. Wasdin