**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ANDREW J. CHAN, SB# 302526
E-Mail: Andrew.Chan@lewisbrisbois.com
2185 North California Boulevard, Suite 300
Walnut Creek, California 94596
Telephone: 925.357.3456
Facsimile: 925.478.3260

Attorneys for Defendant FITON INC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JENNIFER ENDRES, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FITON INC,<br><br>Defendant. | Case No. 2:24-CV-01589-FMO-PD<br><br>**DEFENDANT FITON INC.'s REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date: July 18, 2024<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>Judge: Hon. Fernando M. Olguin<br><br>Action Filed: February 27, 2024<br>Trial Date: None Set |

## I. INTRODUCTION

Defendant FitOn properly reads *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017). Personally identifiable information ("PII") under VPPA "means only that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" The Complaint alleges PII has been shared through computer code as captured in various screenshots in the pleading. Contrary to Plaintiff's conclusory contentions in the Complaint and Opposition, the screenshots demonstrate the Complaint has not sufficiently pled that an ordinary person could take the computer code, ***as presented***, and readily decipher it.

The Opposition also contends the computer code was mutually intelligible as



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

between FitOn and Meta such that FitOn knew Meta was allegedly collecting PII. The Complaint does not support the assertion. On "information and belief," the Complaint concludes FitOn must have known Meta collected persons' video activity because FitOn wanted to advertise to individuals based on that activity. The alleged facts do not reasonably lead to Plaintiff's belief and the averment cannot stand.

The Opposition's revelation to the Court that Plaintiff's lawyer is the holder of the Facebook account tied to the Facebook ID the Complaint relies on to try to plead the elements of a VPPA claim does not impede the Court's consideration of a webpage for that ID. The webpage states its "content," that is, Facebook profile for the account holder, "isn't available." The webpage places in context Complaint screenshots of other webpages for the same account holder and Plaintiff's critical contention that any person can identify a person through a Facebook ID.

## II. <u>BACKGROUND</u>

The Opposition's "Background" paints a picture that FitOn directly "discloses" Facebook IDs and the video activity of FitOn users (Opp'n 2-4, 17), but the Complaint demonstrates the data "disclosed" is not readily decipherable by the ordinary person. The Complaint uses multiple screenshots to illustrate what is "shown" when FitOn "shares" information (*see, e.g.*, D.E. 1 ¶ 76). The screenshots stand in stark contrast to Plaintiff's conclusory observations. For instance, Plaintiff contends FitOn discloses the "URL where the video is located online" (Opp'n 3), with one such URL being, "inprogress/22" (D.E. 1 ¶ 77). However, the screenshot for this URL – the information actually "disclosed" as declared by the Complaint – is almost indecipherable (*id.* ¶ 77):

//

//

//

//

//

**Setup Method**: Manual
**URL called**: Hide


```
https://www.facebook.com/tr/?id=1394702670665430&ev=PageVi
ew&dl=https%3A%2F%2Fapp.fitonapp.com%2Finprogress%2F22&rl=
https%3A%2F%2Ffitonapp.com%2F&if=false&ts=1708369712761&sw
=1470&sh=956&v=2.9.147&r=stable&a=tmSimo-GTM-WebTemplate&e
c=5&o=4126&fbp=fb.1.1708364817611.814840966&cs_est=true&le
r=other&it=1708369688253&coo=false&cdl=&exp=e1&rqm=GET
```


"Inprogress/22" is not "shared" as Plaintiff asserts. The other Complaint screenshots, as discussed throughout FitOn's opening brief, are similar. They do not present easily digestible expressions of Facebook IDs and user video activity. This is computer code that leads the ordinary person to say: What is this?

## III. ARGUMENT

### A. The Opposition fails to establish Plaintiff has properly pled disclosure of PII under the VPPA

It may be true that if somebody directly shares a Facebook ID or "Facebook link," the information may "readily enable an 'ordinary person' to identify an individual," (*Eichenberger*, 876 F.3d at 986), but the computer code allegedly disclosed, as shown in the Complaint screenshots, is not in a form that would "readily enable" an individual to identify another person or video content requested or obtained by that person. Nor has the Complaint adequately alleged Meta collected data using the Meta Pixel from FitOn via code "mutually intelligible" to those entities.

#### 1. The Complaint does not sufficiently allege Defendant's "disclosures" to Meta were "mutually intelligible"

Plaintiff argues that only Meta is relevant to whether Plaintiff sufficiently has alleged a VPPA violation. According to Plaintiff, it is irrelevant that the ordinary person (who Plaintiff describes as the "random person on the street") "might be unfamiliar with the technology used or the format of the data transfer" (Opp'n 9-10). To try to support this position, Plaintiff quotes *In re Hulu*, for the notion that the

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

VPPA can be violated if PII is provided by computer code "mutually intelligible" to the parties. 86 F. Supp. 3d at 1096. Stated differently, Plaintiff is surfacing the "knowingly" component of disclosure under the VPPA (i.e., contending Defendant knew it was "disclosing" PII to Meta because both parties understood what was being collected). 18 U.S.C. 2710(b)(1).[1] The computer code here is that created by Meta for Meta Pixel. The code allows Meta to "capture a substantial amount of information by default," "transmit[] HTTP header information … by default," and "automatically collect 'Pixel-specific Data,'" to include the "c_user cookie" (D.E. 1 ¶¶ 60-63).

The Complaint does not allege a mutual understanding about how Meta's pixel code operates other than by inferring through "information and belief" and in conclusory fashion that FitOn allowed Meta Pixel so that FitOn could "show targeted advertising to its subscribers based on their video viewing history," which, therefore, apparently implies FitOn knew Meta collected individual viewing activity (*id.* ¶ 82). But the other Complaint paragraphs do not render plausible Plaintiff's inferences nor reasonably permit the conclusion that FitOn – as between all the "substantial" types of data allegedly gathered by Meta automatically and by default (*id.* ¶¶ 60-63) – targeted advertising to subscribers based on video activity.

The Complaint simply contends FitOn advertises in conjunction with Meta Pixel (*id.* ¶ 4). This is not enough to transform Plaintiff's conclusions into sufficient contentions that FitOn knew what Meta was gathering through Meta's pixel code.

---

[1] Plaintiff states FitOn "does not contest it knowingly made … disclosures" (Opp'n 1, 6, 9). This is inaccurate, as are other Opposition opinions about what FitOn does not "contest" (*see, e.g., id.* 9, 16). "Knew" does not appear in FitOn's motion and "knowingly" appears once and only when quoting the VPPA. FitOn's motion follows applicable 12(b)(6) standards and argues accordingly. Thus, its motion primarily places the word "disclosure" in quotes because Plaintiff alleges that, but Plaintiff has not sufficiently alleged Defendant knowingly disclosed.

*See Cantu v. Sunrun Inc.*, 2023 U.S. Dist. LEXIS 238159, *3 (S.D. Cal. Nov. 22, 2023) (granting motion to dismiss VPPA claim and noting courts "need not accept conclusory allegations as true" and should assess a conclusion's worth by looking to facts alleged).[2]

**2. The Opposition does not overcome the "ordinary person" standard**

The Opposition argues that "even" if the average individual is relevant to Plaintiff's allegations, the code "disclosed" is presented in a form readily decipherable by that individual. Opp'n 10-12.

In *Eichenberger*, the court found Defendant's disclosure did not involve VPPA PII because the ordinary person (as opposed to Adobe) could not readily use the disclosure to identify a person. 876 F.3d at 986. In *In re Hulu*, the court stated that for a disclosure to occur when data is a "collection of alphanumeric strings," which others facially do not understand, the recipient "must know" the sender has used a code and "must at least have the capacity to decode and read the contents." 86 F. Supp. 3d 1090, 1096-97 (N.D. Cal. 2015). The code here is such a collection of alphanumeric strings.

The Complaint does not allege the ordinary person could take this code and derive its contents. Instead, the Complaint and Opposition, repeatedly and at length,

---

[2] Plaintiff also states it is currently irrelevant if others, regardless of how many, do not have Facebook IDs (Opp'n 11). Plaintiff's theory is that persons are identified through a Facebook ID. Thus, if a person isn't a Facebook account holder, they don't have an ID and cannot be identified. Plaintiff brushes this aside, claiming she has a Facebook account and whether others do is an issue for class certification (*id.*). As such, Plaintiff all but concedes she does not know if her allegations about the class she purports to represent are accurate. *See, e.g.*, Compl. ¶ 92 ("By prevailing on her own claims, Plaintiff will establish liability as to all class members," but, as alleged, this cannot be true for "class members" that do not have a Facebook ID).

state that if you give an ordinary person a Facebook ID (D.E. 1 ¶¶ 65, 67) or the number of a FitOn video (*id.* ¶ 75) the person can identify the person associated with the Facebook ID and find a video on the FitOn platform (Opp'n 10-11, 17, 18, 21-22). But again, ***what is shared is not neatly and discretely compartmentalized for a recipient; it is not the same as handing somebody a piece of paper that states, "Facebook ID = 12345 and the video activity for the holder of that Facebook ID is for video ZZZ."*** Moreover, the "disclosed" code depicted by pleading screenshots (*see, e.g.*, D.E. 1 ¶ 76) does not include the explanatory text Plaintiff adds to the screenshots. The inserts highlight an ordinary person would need direction to know what she is viewing.[3]

To try to overcome this pleading deficiency, the Opposition claims the ordinary person could take the code provided and "do basic research on Google" (Opp'n 21; *see also id.* 13), but that is not alleged in the Complaint. Regardless, the Opposition does not specify how the ordinary person would structure the "basic" research such that he/she/they would not only solve the riddle of the c_user cookie, but, inter alia, reach the "connection" between video content and an individual, a necessary element of a VPPA claim. *See In re Hulu*, 86 F. Supp. 3d at 1095.

More broadly, the Opposition contends VPPA PII is "included" in the screenshots (*see, e.g.*, Opp'n 16, 21), but that is misleading. By example, Plaintiff

---

[3] Plaintiff perceives this argument as being about the "c_user cookie" and cites cases saying an individual's understanding about the cookie is irrelevant because the cookie contains a Facebook ID (Opp'n 11-13 (citing *Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180 (N.D. Cal. July 28, 2023); *Golden v. NBC Universal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023). *Sellers* and *Golden*, however, do not directly tackle the argument here. If an ordinary person is provided, without more, computer code containing hundreds of alphanumeric characters, the fact that a c_user number that translates to a Facebook ID is somewhere in the lines of code does not mean an ordinary person would know the ID was there. If a person is not aware of the ID, she/he/they cannot use it to identify a person.

argues the URL, app.fitonapp.com/browse/workout/22, is basically the same as the code, "app.fitonapp.com%2Fbrowse%2Fworkout%2F22" (Opp'n 21). Not only is that a stretch, but the plausibility of the assertion fully collapses when the code is viewed as pled. The code ("app.fitonapp.com%2Fbrowse%2Fworkout%2F22") is not presented in isolation, but embedded in a continuous stream of eight lines of symbols and characters numbering a thousand or more:




(D.E. 1 ¶ 76). The information, as presented (i.e., "included") does not ***readily permit*** an ordinary person to identify PII under VPPA.[4]

B. **<u>Citation to the "Content isn't Available" Facebook Webpage is Appropriate in Deciding this Motion</u>**

The Opposition attempts to discredit Defendant's citation to a Facebook

---

[4] Plaintiff spends 2.5 pages attempting to distinguish *Martin v. Meredith Corp.*, 2023 U.S. Dist. LEXIS 27539, *7 (S.D.N.Y. Feb. 17, 2023), which Defendant cites as a .*Cf* when arguing a URL containing the word "browse" merely suggests "somebody has opened a webpage; ***not*** that he/she/they requested or obtained anything from the page." Nowhere in her 2.5 pages does Plaintiff counter Defendant's "browse" argument. The mixed content of the subject webpage further implies "browse" means just that.

webpage ("Facebook Page") that aptly puts in context Plaintiff's allegation that "anyone can identify a meta profile … by appending the Meta ID to the end of https://facebook.com" (Compl. ¶ 67). The Facebook Page, an exhibit to the Declaration of Christopher Wood in support of this motion (*see* D.E. 22), shows that when Defendant, through counsel, followed Plaintiff's "appending" instructions on May 13, 2024 for the Facebook ID (105425), which Plaintiff touts, the activity did not lead to the identity of an individual, but rather this message: "**This content isn't available right now**." This was not an "experiment" (Opp'n 13-14) but execution of Plaintiff's direction on how, supposedly, to uncover a person's identity using the very Facebook ID Plaintiff repeatedly relies in her Complaint.

Defendant claims, "most importantly," that the Court should not consider the Facebook Page because "it is improper to assume the truth of matters asserted in incorporated documents only to resolve factual disputes" in a complaint (Opp'n 16 (citation omitted)). But Defendant is not citing to the Facebook Page to assert the truth of matters therein, but to show the page does not reveal a Facebook profile.

Plaintiff also contends the Facebook Page should not be considered because Plaintiff "reasonably can question the authenticity of the document" (Opp'n 15). Plaintiff chooses her language carefully; she avoids stating she actually challenges the document's authenticity. This is not enough to avoid incorporation by reference. To do so, a party must question authenticity, not merely opine on the possibility of doing so. *See Knievel*, 393 F.3d at 1076. Regardless, the indicia of authenticity is substantial. The document contains the time and date of capture, the URL, and counsel's declaration endorsing the record, captured at his request, as a true and correct copy of the document. *See Larsen v. Vizio, Inc.*, 2017 U.S. Dist. LEXIS 116195, *15-16 (C.D. Cal. June 26, 2017).

Further, Plaintiff argues the Facebook Page was not incorporated by reference (Opp'n 13-16). Plaintiff contends the document cannot be incorporated because it is not specifically identified in the Complaint (*id.* 14). However, in *Khoja*

*v. Orexigen Therapeutics, Inc.*, a decision on which Plaintiff relies, the Court found that in certain circumstances such documents can be considered when necessary to "assessing the sufficiency of a claim." 899 F.3d 988, 1002 (9th Cir. 2018). Further, *Khoja* states the incorporation by reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken-or doom-their claims." *Id.* at 1002 (citation omitted). In essence, that is what Plaintiff has done here.

The Complaint shows numerous documents allegedly displaying PII of, who we now know to be, Plaintiff's lawyer (Opp'n 13). Plaintiff, instead of making allegations based on her experience, asserts a VPPA claim by documenting her lawyer's activity. The documentation for the lawyer's interaction with FitOn – captured in five screenshots – allegedly includes the lawyer's identity (as supposedly represented by a c_user cookie with the number, 105425) and video content requested or obtained by the lawyer (*see* D.E. 1 ¶¶ 76, 77, 79, 80). Missing from the documentation is the Facebook Page, which, according to Plaintiff's allegations, should have revealed her lawyer's Facebook profile (*id.* ¶ 67). To properly place into context Plaintiff's claim, using her lawyer's activity as illustrative, including the supposed disclosure of his Facebook ID, the Facebook Page should have been included in the Complaint.[5] Instead, Plaintiff omitted it because it weakens or dooms the sufficiency of her claims.

This perspective is supported by the fact that Plaintiff's lawyer (who has self-identified as account holder for ID 105425 because his identity was not available as alleged) has apparently changed his privacy settings on his Facebook account. When Defendant's counsel revisited the Facebook Page on July 1, 2024, the page

[5] *Cf. Khoja*, 899 F.3d at 1002 (citing *Knivel v. ESPN*, 393 F.3d 1068 and noting for defamation claims that statements must be placed in context, to include information not specifically identified in complaint).

displayed the lawyer's Facebook profile. The evidence found previously and captured in the Facebook Page has been removed. If the litigation continues, and given Plaintiff's lawyer's import to the Complaint allegations through his online activity, Defendant will need to take discovery of Plaintiff's lawyer, now a fact witness.

## IV. CONCLUSION

Defendant's motion to dismiss should be granted with prejudice.

DATED: July 4, 2024

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: */s/ Andrew J. Chan*
ANDREW J. CHAN
Attorneys for Defendant FITON INC

**FEDERAL COURT PROOF OF SERVICE**
*Jennifer Endres v. FitOn Inc.*
Case No. 2:24-CV-01589-FMO-PD

STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA

At the time of service, I was over 18 years of age and not a party to the action. My business address is 2185 N. California Blvd, Suite 300, Walnut Creek, CA 94596. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On July 4, 2024, I served the following document(s): **DEFENDANT FITON INC.'s REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on July 4, 2024, at Walnut Creek, California.

*/s/ Andrew J. Chan*
Andrew J. Chan

**SERVICE LIST**
*Jennifer Endres v. FitOn Inc.*
Case No. 2:24-CV-01589-FMO-PD

| | |
|---|---|
| Robert G. Loewy, Esq.<br>**LAW OFFICE OF ROBERT LOEWY PC**<br>20 Enterprise, Suite 310<br>Aliso Viejo, CA 92656<br>T: (949) 468-7150 / F: (949) 242-5105<br>rloewv@rloewv.com | Attorneys for Plaintiff,<br>JENNIFER ENDRES<br><br>T: (949) 468-7150<br>F: (949) 242-5105<br>Email: rloewy@rloewy.com |
| Nicholas F. Wasdin, Esq.<br>**Dwoskin Wasdin LLP**<br>110 North Wacker Drive, Suite 2500<br>Chicago, IL 60606 | Attorneys for Plaintiff,<br>JENNIFER ENDRES<br><br>T: (312) 343-5361<br>Email: nwasdin@dwowas.com |
| Jose A. Meneses, Esq.<br>Jeffrey F. Gersh, Esq.<br>**STUBBS ALDERTON AND MARKILES LLP**<br>15260 Ventura Boulevard 20th Floor<br>Sherman Oaks, CA 91403 | Attorneys for Defendant,<br>FITON INC<br><br>T: (818) 444-4548<br>T: (818) 444-9222<br>F: (818) 444-4520<br>Email: jmeneses@stubbsalderton.com<br>Email: jgersh@stubbsalderton.com |